UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23915-BLOOM/Louis

MARGARET RADKE,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant NCL Bahamas Ltd.'s ("Defendant") Motion for Partial Summary Judgment and Supporting Memorandum of Law, ECF No. [57] ("Motion), filed on February 17, 2021. The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.    BACKGROUND**

On September 19, 2019, Plaintiff Margaret Radke ("Plaintiff") initiated the instant action against Defendant for personal injuries she sustained while onboard Defendant's cruise ship, the *Norwegian Sky*. ECF No. [1]. The Amended Complaint, ECF No. [34] ("Complaint"), alleges that on September 24, 2018, while walking past the elevators on Deck 11 near the Garden Café, Plaintiff slipped and fell on a wet liquid substance, thereby sustaining serious injuries. *Id.* ¶¶ 7, 9. Plaintiff explains that the floor immediately adjacent to where she was walking was wet due to "recent mopping, a spill or leak" and further states that, at the time of her fall, "there were no warning signs to alert passengers (including the plaintiff) that the floor was wet and a hazard for

slipping." *Id.* ¶ 7. Based on these allegations, the Complaint asserts two counts against Defendant based upon negligence (Count I) and failure to warn (Count II). *See generally id.*

Regarding the instant Motion, ECF No. [57], Defendant has filed its corresponding Statement of Material Facts in Support of its Motion, ECF No. [56] ("Defendant's SMF"). Plaintiff filed a Response, ECF No. [77] ("Plaintiff's MSJ Response"), together with her Response to Defendant's SMF, ECF No. [76] ("Plaintiff's SMF Response"). Finally, Defendant filed a Reply in support of its Motion, ECF No. [83] ("Defendant's MSJ Reply"), and a Reply Statement of Material Facts, ECF No. [82] ("Defendant's SMF Reply").

## II.  MATERIAL FACTS

Based upon the parties' respective statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Plaintiff was a lawfully paying passenger onboard the *Norwegian Sky*. ECF Nos. [56] ¶ 1 and [76] ¶ 1. On September 24, 2018, Plaintiff woke up from bed at approximately 2:00 a.m., packed her belongings, and then proceeded to the casino onboard the cruise ship. ECF No. [76-1] at 80:20-81:14. Plaintiff left the casino at approximately 4:00 a.m. *Id.* at 81:10-19. Upon leaving the casino, Plaintiff returned to her room, and then left shortly thereafter to get coffee from the all-night buffet. *Id.* at 83:2-7.

At approximately 4:19 a.m., Plaintiff was walking past the rear elevators near the Garden Café on Deck 11, when she stopped to observe an altercation amongst passengers. *Id.* at 89:17-91:8; *see also* ECF No. [69-1] at 4:19:40-4:23:8.[1] The CCTV footage depicts the altercation near the elevators, along with the walkway near the doorway to the galley for the Longboard Bar and

---

[1] The CCTV footage submitted by the parties ranges from approximately 4:13 a.m. to 4:47 a.m.

Great Outdoor restaurants—i.e., the walkway where Plaintiff would later fall. *See generally* ECF No. [69-1]. The CCTV footage shows, in pertinent part, a crewmember holding a mop and observing the altercation, a yellow trifold caution positioned across from the crewmember, and a towel placed on the floor and along the galley door. *Id.* at 4:20:58-4:23:08. At approximately 4:23 a.m., Plaintiff left the scene of the altercation, and walked past the subject incident area. *Id.* at 4:23:00-4:23:09; *see also* ECF No. [76-1] at 89:17-25. Plaintiff testified that she saw the crewmember mopping the area and the caution sign. ECF No. [76-1] at 92:5-9, 97:23.

Plaintiff walked away for approximately ten minutes before returning to the subject area. *Id.* at 91:18-24; *see also* ECF No. [69-1] at 4:23:09-4:33:58. During that time, a crewmember moved the caution sign from its original position near the doorway to the carpeted area near the elevators, and the towel that was placed along the base of the galley doorway was pushed off to the corner of the door. ECF No. [69-1] at 4:27:12-4:27:53. The CCTV footage also depicts crewmembers walking in and out of the galley and through the subject area wearing rubber boots, rolling trays, or carrying items such as a bucket and a broom. *Id.* at 4:24:41-4:30:32.

At approximately 4:33 a.m., Plaintiff returned to the subject area and slipped and fell on a liquid substance adjacent to the door to the galley. ECF No. [69-1] at 4:33:58; *see also* ECF No. [76-1] at 96:7-97:6. Plaintiff testified that the liquid appeared to be water and had no odor. ECF No. [76-1] at 96:16-97:6. Plaintiff also explained that the water may have come from a "drink [that was] thrown" or from crewmembers "swabbing the deck." *Id.* 97:2-6. Immediately prior to her incident, Plaintiff did not see any warning signs or crewmembers mopping the area. *Id.* at 96:7-15, 97:15-23. Additionally, Plaintiff could not recall whether the she noticed the liquid substance on the floor, *id.* at 96:7-15, nor whether anyone advised her that the area was wet, *id.* at 112:3-113:14.

According to Defendant, although the original caution sign was moved from the subject incident area, a second caution sign was also present just outside the CCTV footage, which Plaintiff would have passed by prior to her fall. ECF No. [56] ¶ 16. In support of its position, Defendant points to a photograph taken approximately sixteen hours after Plaintiff's incident, which demonstrates where the caution sign "is regularly set up and where it would have been placed at the time of Plaintiff's incident." *Id.* ¶ 18, n.2; *see also* ECF Nos. [56-7] and [62-1] at 20:23-21:11, 57:2-60:4, 92:2-15. Additionally, Defendant's corporate representative testified that caution signs are placed in the subject area as a "precautionary measure" due to the "high traffic" nature of the location. ECF No. [62-1] at 20:23-21:11.

Plaintiff disputes that a second caution sign was present in the subject area at the time of her incident. ECF No. [76-1] at 97:15-23. Despite walking through the subject area multiple times while on the cruise ship, including at least ten minutes prior to her fall, Plaintiff maintains that the condition of the floor changed from her prior visits, and that Defendant did not provide adequate warning that the floor was wet. *Id.* at 91:18-93:8, 97:15-23. Plaintiff also highlights that the CCTV footage shows three passengers slipping near the subject area prior to her fall. ECF No. [69-1] at 4:15:33, 4:22:49, 4:31:15. Defendant objects to Plaintiff's characterization that these individuals "slipped" and argues that they either lost balance or stopped short. ECF No. [82] ¶ 27(a); *see also* ECF No. [62-1] at 76:1-7, 80:16-81:11, 87:1-88:22.

Defendant now moves for partial summary judgment, arguing that the wet floor was open and obvious. Alternatively, Defendant maintains that it satisfied its duty to warn by placing caution signs in the area of Plaintiff's fall.

### III.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) ("*One Piece of Real Prop.*"). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Rule 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must

be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Moreover, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *see also Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

## IV. DISCUSSION

Defendant argues that summary judgment is warranted as to Plaintiff's failure to warn claims in Paragraph 12(a) and Count II of the Complaint because Defendant did not have a duty to warn Plaintiff of the open and obvious condition of the wet floor. ECF No. [57] at 6-8. Alternatively, Defendant contends that even if the wet floor was not open and obvious, Defendant satisfied its duty to warn by placing caution signs in the area of Plaintiff's fall. *Id.* at 8-9. The Court considers each argument in turn.

### A. General Maritime Negligence Claims

As the instant action concerns maritime negligence claims, the Court will briefly explain the relevant framework for addressing these claims. "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*,

920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier

have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322.[2] "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "Reasonableness of care, in turn, is measured by the extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and pose greater danger to the passenger." *Miller*, 2016 WL 4809347, at *4 (citing *Reinhardt v. Royal Caribbean Cruises*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)).

"The analysis used to determine Defendant's duty in maritime law is intertwined with the analysis of whether a dangerous condition, in fact, existed." *Id.* "A dangerous condition is one that is not apparent and obvious to a passenger." *Id.* (citing *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2009)). "Under federal admiralty law, a cruise ship has no duty to warn of known dangers that are open and obvious." *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018) (citing *Keefe*, 867 F.2d at 1322); *see also Chaparro*, 693 F.3d at 1336 (explaining that "a cruise line owes its passengers a duty to warn of known dangers").[3]

---

[2] "Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bah. Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)) (citing *Keefe*, 867 F.2d at 1322; *Rodgers v. Costa Crociere, S.p.A.*, No. 08-60233, 2009 WL 10666976, at *3 (S.D. Fla. July 6, 2009)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)).

[3] As the Eleventh Circuit has explained, "[a]n open and obvious condition is one that should be obvious by the ordinary use of one's senses." *Krug*, 745 F. App'x at 866 (citing *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345-46 (S.D. Fla. 2015)); *see also Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D.

"The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller*, 2016 WL 4809347, at *4. Moreover,

> [t]o establish the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; [and] (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013) (alteration added; citations omitted).

*Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019).

### B. Open and Obvious Condition

Defendant first argues that summary judgment is appropriate because a reasonable person in Plaintiff's position would have perceived "the wet floor through the ordinary use of their senses." ECF No. [57] at 8. As explained above, "[a] dangerous condition is one that is not apparent and obvious to a passenger[.]" *Stewart*, 365 F. Supp. 3d at 1275. "A cruise line does not need to warn passengers or make special arrangements for open-and-obvious risks . . . . In determining whether a risk is open and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions." *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018).

Defendant contends that Plaintiff's testimony conclusively establishes that the purportedly dangerous condition was open and obvious because she: (1) walked through the subject area multiple times prior to her incident; (2) saw a crewmember mopping the floor in the subject area shortly before her fall; (3) she saw a drink being thrown; and (4) admitted that a passenger advised

---

Fla. 2015) (noting that open and obvious conditions are "discernable through common sense and the ordinary use of eyesight"). "[Courts] evaluate whether a danger would be open and obvious from an objectively reasonable person's point of view and do not focus on the plaintiff's subjective perspective." *Krug*, 745 F. App'x at 866 (citing *Lugo*, 154 F. Supp. 3d at 1345-46).

her about the condition of the wet floor. ECF No. [57] at 6.[4] In her Response, Plaintiff maintains that the subject spill was not open and obvious because a reasonable person would not have seen the "clear, odorless liquid" and "multiple other passengers" slipped in the subject area prior to Plaintiff's fall. ECF No. [77] at 4-7.[5]

Upon review of the record evidence, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that there is a genuine issue of material fact as to whether a dangerous condition existed that was open and obvious. As an initial matter, the Court must highlight that Defendant's representation of Plaintiff's testimony is incomplete, which necessarily demonstrates that a genuine issue of material fact exists. First, while it is true that Plaintiff passed through the area multiple times prior to her fall, she also testified that, upon her return to the area approximately ten minutes later, she observed that the condition of the area had changed—namely, the caution sign was removed from the subject area and the crewmember who Plaintiff observed with the mop was no longer present. ECF No. [76-1] at 92:5-9, 95:9-15, 96:7-15, 97:15-23; *see also* ECF No. [69-1] at 4:20:58-4:33:58. Thus, while Defendant's argument that Plaintiff had walked through the subject area prior to her fall is relevant, "it does not preclude the fact that the condition of the floor may have changed from [Plaintiff's] prior visits to that particular location." *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1095 (S.D. Fla. 2014); *see also Aponte v. Royal Caribbean Cruise*

---

[4] For the purposes of addressing Defendant's Motion, the Court construes the ambiguous portions of Plaintiff's testimony in the light most favorable to Plaintiff. Thus, Plaintiff's testimony that she "is sure [she] saw that [the floor] was wet" and that she "think[s] [she] must have" noticed something wrong with the area, do not conclusively establish her knowledge of the wet floor because Plaintiff also testified that she had trouble recalling and did not see any caution signs or crewmembers working in the area immediately prior to her incident. ECF No. [76-1] at 95:9-97:23.

[5] In her Response, Plaintiff also seems to argue that the risk-creating condition that caused her to fall was the "unreasonably slippery nature of the liquid on the floor." ECF No. [77] at 6. The Court, however, does not address this argument because Plaintiff has not introduced any evidence regarding the slippery nature of the floor. Nonetheless, as fully explained herein, genuine issues of material fact remain regarding the open and obvious nature of the wet floor and the sufficiency of the warning signs, precluding summary judgment.

*Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) ("What a plaintiff actually perceives is, of course, relevant to the determination of what a reasonable person would perceive under the same circumstances. But Aponte did not testify that he saw the puddle and still stepped in it. Rather, his testimony was that he did not see anything on the floor of the restroom until after he slipped.").

Additionally, Plaintiff did not testify that she personally saw a drink being thrown, but rather that "the crew saw it." ECF No. [76-1] at 96:20-97:6; *see also* ECF No. [69-1] at 4:16:42. Nonetheless, even if she did, the Court cannot conclude as a matter of law that the liquid, odorless substance on the floor was visible or otherwise obvious to an individual utilizing their normal faculties. This is especially true in light of the passage of time from when Plaintiff originally walked through the subject area, the change of circumstances upon Plaintiff's return to the subject area, and the CCTV footage showing three other passengers slipping or losing their balance near the subject area prior to Plaintiff's fall. ECF No. [76-1] at 96:7-97:23; *see also* ECF No. [69-1] at 4:15:33-4:33:58. *See Plott v. NCL Am., LLC*, 786 F. App'x 199, 203 (11th Cir. 2019) ("We cannot conclude, as a matter of law, that a reasonably prudent person through the exercise of common sense and the ordinary use of her senses would have clearly seen a colorless and odorless puddle on the floor."); *see also Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1194 (S.D. Fla. 2016) (finding "disputed issues of material fact regarding whether a puddle consisting of a clear, gooey, slimy substance on a deck is an open and obvious danger.").[6]

---

[6] The cases cited by Defendant in support of its position that the wet floor was open and obvious are readily distinguishable and have no application to the case at hand. *See Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 867 (11th Cir. 2018) (reasonable person would perceive the danger posed by rushing to a stage with other people in order to win a game); *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1346 (S.D. Fla. 2015) (no duty to warn passenger of the open and obvious danger of descending a bunkbed via a ladder that did not reach the floor); *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) ("The fact that a bag of luggage may be lying on the ground amongst a crowd [during passenger debarkation] is discernible through common sense and the ordinary use of eyesight."); *Lombardi v. NCL (Bahamas) Ltd.*, No. 15-20966-CIV, 2016 WL 1429586, at *3 (S.D. Fla. Apr. 12, 2016) (dangers posed by a seven-inch high bathroom step should have been obvious to passenger through the ordinary use of her senses); *Coto v.*

Accordingly, upon review of the record evidence, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that genuine issues of material fact remain as to whether the wet floor was open and obvious.

### C. Adequacy of the Warning

Alternatively, Defendant argues that even if the danger posed by the wet floor was not open and obvious, "[Defendant] satisfied [its] duty [to warn] by placing caution signs in the area of Plaintiff's fall." ECF No. [57] at 9. For example, according to Defendant, although the original caution sign was moved from the subject area of Plaintiff's fall to the carpeted area near the elevators, there was a second caution sign that was present and located right outside the frame of the CCTV footage. ECF No. [57] at 9; *see also* ECF Nos. [56-7] and [62-1] at 20:23-21:11. Plaintiff, however, disputes that the second caution sign was in place, and argues that neither the original nor the purported second caution sign could "suffice as a warning for the subject dangerous condition because they were not located in the area where [Plaintiff] fell and too far away to serve as a sufficient warning for the area where she fell." ECF No. [77] at 8.

Here, there is a clear dispute between the parties as to whether caution signs were placed in the area of Plaintiff's fall, and whether the caution signs were close enough in proximity to the dangerous condition to serve as a sufficient warning. For this reason alone, the Court cannot determine the sufficiency of Defendant's warnings as a matter of law. Moreover, as Plaintiff correctly notes, it is the factfinder's role to "determine whether such warnings are sufficient under the circumstances." *See Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 954 n.5 (11th Cir.

---

*Hyannis Air Serv., Inc.*, No. CIV. 2005-191, 2008 WL 5632264, at *5 (D.V.I. Jan. 31, 2008) ("Wet stairs, as a result of rainy weather, cannot be considered a condition that requires warning."); *Cremeans ex rel. Cremeans v. Speedway SuperAmerica, LLC*, No. CIV.A. 04-343-KSF, 2005 WL 1883662, at *5 (E.D. Ky. Aug. 9, 2005) ("Regardless of how heavy and fast-closing a door is, there is an obvious danger that any door will close on a finger if it is placed on the doorframe near the hinge.").

2016); *see also Nathans v. Carnival Corp.*, No. 17-23686-CIV, 2018 WL 6308694, at *5 (S.D. Fla. Aug. 31, 2018) ("[T]he question of whether the warning cones were sufficiently close to the area where Plaintiff fell to reasonably warn of the danger of the slippery deck is a factual matter for the jury."); *Magazine v. Royal Caribbean Cruises, Ltd.*, No. 12-23431-CIV, 2014 WL 1274130, at *4 (S.D. Fla. Mar. 27, 2014) ("Whether adequate efforts were made to communicate a warning to the ultimate user and whether the warning if communicated was adequate are uniformly held questions for the jury." (quoting *Stapleton v. Kawasaki Heavy Indus., Ltd.*, 608 F.2d 571, 573 (5th Cir. 1979), *modified on other grounds*, 612 F.2d 905 (5th Cir. 1980))). Accordingly, for the reasons set forth herein, summary judgment on Plaintiff's failure to warn claims in Paragraph 12(a) and Count II of the Complaint are denied.

V. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [57]**, is **DENIED** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 3, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record